UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-13-08
```

JOSEPH KINNEARY,

Plaintiff,

v.

CITY OF NEW YORK et al.,

Defendants.

04 Civ. 5183 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiff Joseph Kinneary ("Kinneary") brought this action against the City of New York (the "City"), and, individually, City employees Marsha Rothem ("Rothem"), Zoe Ann Campbell ("Campbell"), and Louis Tazzi ("Tazzi") (collectively, "City Defendants").[1] Kinneary claimed violations by City Defendants of the Rehabilitation Act, 29 U.S.C. § 794, the Civil Rights Act of 1964, 42 U.S.C. § 1983, the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y. Admin. Code § 8-107 ("NYCHRL"), as a result of their alleged discrimination against him based on a disability of paruresis, or shy bladder syndrome.

---

[1] In his original filing, Kinneary also named as a defendant the Secretary of the United States Department of Homeland Security ("DHS"). By Decision and Order dated March 4, 2005, the Court dismissed the action against DHS for lack of subject matter jurisdiction. See Kinneary v. City of New York, 358 F. Supp. 2d 356 (S.D.N.Y. 2005). In addition, at trial the Court granted the City Defendants' Rule 50 motion dismissing the action as against Rothem and Tazzi.

After trial, a unanimous jury rendered a verdict in favor of Kinneary against City Defendants. The jury awarded Kinneary $100,000 in back pay and $125,000 in non-economic damages based on emotional distress. Kinneary followed with the instant motion, seeking attorneys' fees and costs, prejudgment interest, and reinstatement to his previous employment with the City as a captain of a sludge boat. City Defendants opposed Kinneary's motion and renewed their motion pursuant to Federal Rule of Civil Procedure ("FRCP") 50 ("Rule 50") for judgment as a matter of law, which the Court had previously denied at the close of evidence. City Defendants also moved pursuant to FRCP 59 ("Rule 59") for a new trial because they assert the verdict was against the weight of the evidence, or in the alternative, for remittitur.

## I.  BACKGROUND[2]

Prior to the events giving rise to this action, Kinneary was employed as the captain of a municipal tanker for the New York City Department of Environmental Protection ("DEP"). On December 27, 2001, pursuant to federal regulations,[3] Kinneary

---

[2] The factual summary derives from the trial record and the undisputed representations of the parties in their submissions in connection with the instant motions.

[3] See 46 U.S.C. § 7702(c)(2) ("The Secretary shall require the testing of the holder of a license, certificate of registry, or merchant mariner's document for use of alcohol and dangerous drugs in violation of law or Federal regulation."); 46 C.F.R. § 16.230 ("Marine employers shall establish programs for the chemical testing for dangerous drugs on a random basis ....").

2

was required to provide a urine sample as part of a random drug test.    Kinneary did not provide the urine sample, claiming that he suffered from paruresis, also known as shy bladder syndrome, and was therefore unable to comply.[4]

On February 7, 2002, the DHS, through the Coast Guard, filed an administrative complaint to suspend Kinneary's Merchant Mariner credentials for misconduct, alleging that Kinneary had wrongfully refused to submit to a random drug test.[5]    The hearing on the misconduct complaint was held on October 16, 2002 before a Coast Guard Administrative Law Judge (the "ALJ").    The ALJ issued his decision on February 20, 2003, finding that the misconduct had been proved.    On March 12, 2003, the ALJ ordered Kinneary's Merchant Mariner credentials suspended.

Kinneary appealed the ALJ's decision to the Commandant of the Coast Guard by letter, dated March 17, 2003.    By letter dated March 24, 2003, Kinneary was informed that he must file his appellate brief by May 12, 2003.    Kinneary did not file

---

[4] According to Kinneary's complaint, paruresis is a "medical/psychological condition in which a person is unable to urinate on demand."    (Pl's Compl. at 3.)    He asserted that he first experienced this condition during a test for military service in 1971.    He again encountered the difficulty during random tests in connection with his employment as a ship captain in 1998, 2001, and 2002.    There was no evidence that drug use had any role in any of those situations.    Kinneary finally obtained a medical evaluation evidencing his condition in 2001.

[5] 46 C.F.R. § 16.201(a) provides that drug testing is to be conducted "in accordance with the procedures detailed in 49 C.F.R. part 40."    49 C.F.R. § 40.193 provides for, among other things, the time limit allowed for completion.

his appellate brief until May 19, 2003 and, as a result, the appeal was denied as untimely on April 13, 2004.  Kinneary then filed this action.

On September 28, 2007, the jury rendered its verdict in favor of Kinneary against City Defendants on his claims of discrimination, awarding him $100,000 in back pay and $125,000 in non-economic damages.  The Court stayed entry of judgment until all post-verdict issues regarding damages were adequately resolved, giving the parties the opportunity to reach an agreement on the issues raised in the instant motions.  Because no agreement was reached, on February 7, 2008, the Court ordered that the Clerk of Court file the verdict sheet to enter the judgment but stayed execution pending the Court's determinations of the instant motions.

For the reasons set forth below, City Defendants' and Kinneary's motions are DENIED in part and GRANTED in part.

## II.  **DISCUSSION**

### A.  CITY DEFENDANTS' MOTIONS

City Defendants have renewed their Rule 50 motion, asserting that they are entitled to judgment as a matter of law, and they also brought a Rule 59 motion, asserting that they are entitled to a new trial because the verdict was against the weight of the evidence, or remittitur in the alternative because the jury's award of $125,000 for emotional

4

damages was shockingly excessive.

    1.   Rule 50 Motion

Pursuant to Rule 50, courts may enter judgment as a matter of law following a jury verdict only when there is

> such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or [where there is] such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [the movant].

Logan v. Bennington College Corp., 72 F.3d 1017, 1021 (2d Cir. 1995) (citations and quotation marks omitted). Moreover, for motions pursuant to Rule 50, trial courts "must view the evidence in a light most favorable to the nonmovant and grant that party every reasonable inference that the jury might have drawn in its favor." Samuels v. Air Transp. Local 504, 992 F.2d 12, 16 (2d Cir. 1993). Courts are not to set aside jury verdicts unless "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [triers of fact] could have reached." Id. at 14 (citations and quotation marks omitted).

The Court has already considered the numerous arguments on which City Defendants moved for judgment as a matter of law, including Kinneary's alleged inability to establish a prima facie case, his alleged failure to suggest accommodations to City Defendants, his alleged failure to put

5

City Defendants on notice of his disability, and his alleged failure to mitigate.  The Court has determined that reasonable and fair minded jurors could have found for Kinneary on his discrimination claim and that he was entitled to the various types of damages awarded by the jury.  Accordingly, the Court reiterates its denial of City Defendants' Rule 50 motion.

### 2.  Remittitur

"Remittitur is the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial."  Thomas v. iStar Fin., Inc., 508 F. Supp. 2d 252, 257 (S.D.N.Y. 2007) (citations and quotation marks omitted).  "If the Court determines that the verdict is excessive, it should remit the jury's award to the maximum amount that would not be excessive."  Id. (citations and quotation marks omitted).  In Kinneary's case, the Court concludes that the jury's non-economic damages award of $125,000 is excessive.

In evaluating the reasonableness of a non-economic[6] damages award in discrimination suits, courts often examine "the duration, extent and consequences of mental anguish suffered by [the] plaintiff" to determine whether the case is a "so-called 'garden variety' mental-anguish claim[], in which

---

[6] Courts also often refer to these awards as for "emotional damages."  The Court will use these terms interchangeably.

6

the awards hover in the range of $5,000 to $30,000." Bick v. City of New York, No. 95 Civ. 8781, 1998 WL 190283, at *25 (S.D.N.Y. Apr. 21, 1998).    "In such cases, the evidence usually is limited to the testimony of the plaintiff, who describes the emotional distress in vague or conclusory terms, presents minimal or no evidence of medical treatment, and offers little detail of the duration, severity, or consequences of the condition."    Reiter v. Metropolitan Transp. Auth. of New York, No. 01 Civ. 2762, 2003 WL 22271223, at *9 (S.D.N.Y. Sept. 30, 2003) (citations omitted). Emotional damages awards exceeding this range generally involve particularly egregious conduct on the part of defendants, such as deliberate, highly offensive, wanton, or violent actions and threats, or situations where the plaintiff's emotional distress is so severe that he exhibits multiple objective physical manifestations ordinarily substantiated by expert testimony. See, e.g., McInnis v. Town of Weston, 458 F. Supp. 2d 7, 10 (D. Conn. 2006) (ordering a new trial unless plaintiff agreed to remit his $860,000 non-economic damages award to $150,000 in an age discrimination retaliation claim where plaintiff's fellow police officers threatened to withhold backup in dangerous situations, making plaintiff feel as though his life was in jeopardy); Moskowitz v. Coscette, 3 Fed. Appx. 1, 6 (2d Cir. 2001) (awarding

$125,000 for emotional damages where a police officer's employer violated his First Amendment right to free speech and discriminated against him based on his military status, causing the plaintiff to suffer from headaches, nightmares, diarrhea, night sweats, nervousness, anxiety, and migraines).

The emotional damages Kinneary asserts fall far short of the type of severe injury from extreme misconduct that would warrant the exceptional award he obtained. Kinneary claims to have felt embarrassment and disappointment over losing his position and having to rely on the financial support of family members after his discharge, and he was upset over having to move his daughter out of school. Kinneary did not establish by medical evidence, for example, that he suffered from extreme objective physical manifestations, that he sought psychological or medical treatment, that any particular life activities of his were curtailed due to the emotional distress, or that other circumstances prevailed which might differentiate his situation from the self-described garden variety non-economic damages situation.

Courts in circumstances similar to Kinneary's have found emotional damage awards in the six-figure range to be excessive, ordering new trials unless the plaintiffs agreed to remit such awards to reasonable levels. See, e.g., McIntosh v. Irving Trust Co., 887 F. Supp. 662, 664-65 (S.D.N.Y. 1995)

8

(reducing award from over $200,000 to $20,000 in employment discrimination claim even though the plaintiff was humiliated, shocked, and angry by the discrimination, because the plaintiff did not establish that his mental distress was ongoing or curtailed life activities, and that he had not sought any extended medical or psychological treatment); Tanzini v. Marine Midland Bank, 978 F. Supp. 70, 79-80 (N.D.N.Y. 1997) (reducing award from $200,000 to $30,000 where discrimination was "a very traumatic experience," but the plaintiff did not sufficiently establish the duration or magnitude of his emotional injuries and produced no evidence of treatment); Kim v. Dial Serv. Int'l, No. 96 Civ. 3327, 1997 WL 458783, at *12-13 (S.D.N.Y. Aug. 11, 1997) (reducing $300,000 emotional damages award to $25,000 because the plaintiff complained of only general problems, such as feeling gloomy, losing weight, and having trouble sleeping); Trivedi v. Cooper, No. 95 Civ. 2075, 1996 WL 724743, at *9 (S.D.N.Y. Dec. 17, 1996) (reducing $700,000 award to $50,000 because this amount was the maximum that does not shock the judicial conscience where the plaintiff had not sufficiently established evidence of psychological counseling or physical manifestations of distress).

After reviewing comparable cases, the Court concludes that an award of non-economic damages greater than $25,000

would be excessive in Kinneary's case.  Accordingly, the
City's motion for a new trial pursuant to Rule 59 is granted,
and the Court will order a new trial on the issue of non-
economic damages unless Kinneary agrees by February 25, 2008,
in writing, to remit the non-economic damages award to
$25,000.

B.    KINNEARY'S MOTIONS

Kinneary brought post-verdict motions for reinstatement,
prejudgment interest on his $100,000 back pay award, and
reasonable attorneys' fees and costs.

1.    Reinstatement

Courts in employment discrimination cases may, as an
equitable remedy, order employees reinstated.  See Equal
Employment Opportunity Comm'n v. Waffle House, Inc., 534 U.S.
279, 292-93 (2002); Reiter v. MTA New York City Transit Auth.,
457 F.3d 224, 229-30 (2d Cir. 2006).  Reinstatement, however,
is not always feasible, and may be curtailed by reason of
employers' lack of open positions or of animosity between the
parties, which would make the employment relationship
difficult to function effectively.  See Banks v. Travelers
Cos., 180 F.3d 358, 364 (2d Cir. 1999).

The Court is persuaded that reinstatement in Kinneary's
case is not feasible because of both the lack of open
positions and animosity between City Defendants' upper- and

10

mid-level management and Kinneary. City Defendants, through Campbell, DEP's Acting Deputy Commissioner, Human Resources and Administration, affirmed that there are no vacant positions for Sludge Boat Captain or any other captain positions within DEP. Kinneary claims that City Defendants intend to purchase an additional ship in the Spring of 2008. In response, City Defendants assert that there are no plans to purchase an additional ship, and even if such plans existed, there would be no additional captain's position open because DEP's normal operating procedure is to retire an existing ship upon the purchase of a new ship and place the crew of the old vessel in the new one.

Further, City Defendants assert that on account of the prolonged and contentious nature of Kinneary's action, there is great animosity between DEP's upper management and Kinneary, and that this animosity would make it difficult for Kinneary to function effectively. Kinneary asserts that he could function effectively as a captain for City Defendants because he has no animosity with his co-workers at the operational level. However, City Defendants counter that Kinneary's immediate supervisor remains upset and lost trust in him because, though Kinneary's captain's license had expired prior to his discharge, he continued operating a ship for nearly two weeks without informing his immediate

11

supervisor that he did not possess a valid license. Ill-will between City Defendants and Kinneary also developed because of several occasions in which Kinneary, unable to urinate on demand during a random drug test, filled the jar with water, providing further grounds for mistrust of Kinneary by DEP's management. These circumstances serve to diminish the strength of Kinneary's claim for an equitable remedy. Insofar as such relief is discretionary, it is substantially guided by the doctrine that equity demands clean hands. Kinneary's conduct during these incidents was far from exemplary, in particular as regards an employee occupying a sensitive position demanding extraordinary judgment and public trust.

Thus, after weighing the equities, the Court finds that Kinneary has not established sufficient compelling circumstances to overcome the operational difficulties asserted by City Defendants. Accordingly, reinstatement is not warranted in this situation.

    2.  <u>Prejudgment Interest</u>

While the decision to award prejudgment is left to the sound discretion of trial courts, it is ordinarily an abuse of discretion not to award prejudgment interest on back pay damages. <u>See</u> <u>Gierlinger v. Gleason</u>, 160 F.3d 858, 873-74 (2d Cir. 1998) ("Awarding prejudgment interest ... prevents the defendant employer from attempting to enjoy an interest-free

loan for as long as it can delay paying out back wages ... and
helps to ensure the plaintiff is meaningfully made whole.")
(citations and quotation marks omitted).

City Defendants argue that prejudgment interest is
inappropriate under Kinneary's circumstances because he did
not sufficiently mitigate his loss of income during the
relevant period. The Court disagrees. At the trial, City
Defendants put forth this same failure-to-mitigate argument to
the jury. In its jury charge, the Court instructed the jury
that if Kinneary unreasonably failed to take advantage of an
opportunity to lessen his damages, the jury should deny
recovery for those damages, and thus, the jury presumably took
Kinneary's alleged failure to mitigate into account when it
awarded him $100,000 in back pay damages. See Rose v. Clark,
478 U.S. 570, 595 (1986) ("The ordinary view is that a jury
adheres to the [Court's] instructions ... .") (citations
omitted). If the Court refused to grant prejudgment interest
on the jury's back pay award, then Kinneary would not be fully
compensated for the loss of the use of money wrongfully
withheld through an unlawful discharge. See Kirsch v. Fleet
Street, Ltd., No. 92 Civ. 932, 1996 WL 695687, at *1 (S.D.N.Y.
Dec. 4, 1996) (citations omitted).

When "a judgment is based on violations of both federal
and state law, courts in [the Second Circuit] uniformly have

13

applied a federal interest rate, most commonly based on the average rate of return on one-year Treasury bills ... for the relevant period of time." Kuper v. Empire Blue Cross and Blue Shield, No. 99 Civ. 1190, 2003 WL 23350111, at *3 (S.D.N.Y. Dec. 18, 2003) (citations omitted); see also 28 U.S.C. § 1961(a). Calculating the award should be done as follows:

> First, the award[] should be divided pro rata over the appropriate time period. Second, once the award is divided, the average annual United States treasury bill rate of interest referred to in 28 U.S.C. § 1961 will be applied. Third and finally, in order to guarantee complete compensation to the plaintiff, the interest will be compounded annually.

Robinson v. Instructional Sys., Inc., 80 F. Supp. 2d 203, 208 (S.D.N.Y. 2000) (citations omitted). Accordingly, the Clerk of Court is directed to use this methodology to calculate the interest on the back pay award of $100,000 from March 4, 2004 to the date the judgment is entered.

3.   Attorneys' Fees and Costs

Kinneary, who is a prevailing party in a disability claim, is entitled to reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12205.

The factors that courts should consider in determining appropriate fee awards are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance

14

of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. See Reiter v. Metropolitan Transp. Auth. of New York, No. 01 Civ. 2762, 2007 WL 2775144, at *3 (S.D.N.Y. Sept. 25, 2007) ("Reiter II").

In support of his motion for attorneys' fees and costs, Kinneary submitted a fee log, detailing the date, the legal task completed, the legal professional, and the amount of time for each task. The legal professionals who worked on Kinneary's case included Ambrose Wotorson, Esq. ("Wotorson"), Victor Dunlop, Esq. ("Dunlop"), and Perthrina Pegus-Neptune ("Pegus-Neptune"). None of the entries pertained to time spent responding to DHS's motion to dismiss because those fees would not be chargeable against City Defendants.

a. Ambrose Wotorson, Esq.

Wotorson is a 1992 graduate of the University of Miami School of Law. Since 1995, Wotorson has worked in private practice, focusing on civil rights, employment law, police misconduct litigation, and criminal defense matters. He

15

represented to the Court that approximately 90 percent of his legal work was devoted to federal and state employment cases.

Here, Wotorson asserts that based on the novelty of Kinneary's case,[7] his sixteen years of litigation experience, his experience with employment cases, and the successful trial result obtained, the Court should approve his rate of $350 per hour.

City Defendants dispute that Wotorson's legal services are worth $350 per hour in employment cases, asserting that among employment lawyers, $350 per hour is a premium rate, and that however skilled Wotorson may be as an advocate, he does not yet merit fees at the $350-per-hour level. Instead, City Defendants submit that Wotorson's experience more appropriately warrants a rate of $225 per hour.

The Court concludes that, based on Wotorson's employment and litigation experience, City Defendants' proposed rate of $225 per hour is unreasonably low. Setting his rate at $225 per hour would represent a roughly seven percent increase over the $210 rate approved for Wotorson by a federal court in an employment discrimination case ten years ago.[8] Taking into account Wotoroson's employment and litigation experience and

---

[7] Wotorson states that Kinneary's case is currently the only federal discrimination case in which a jury has found in favor of an employee suffering from shy bladder syndrome.

[8] See Agonafer v. Rubin, 35 F. Supp. 2d 300 (S.D.N.Y. 1998).

16

all the factors listed above in <u>Reiter II</u>, the Court concludes that, under the circumstances present in the instant case, a rate of $300 per hour is reasonable for Wotorson's legal services. Accordingly, the reasonable legal fees attributable to Wotorson's services amount to $78,300.[9]

### b.  <u>Victor Dunlop, Esq.</u>

Dunlop, an associate at Wotorson's law office, has four years of experience in the field of civil litigation. Wotorson asserts that a rate of $175 per hour is appropriate for Dunlop's services. City Defendants, however, dispute this rate, asserting that this was Dunlop's first civil rights or employment case, and that he should be billed at $125 per hour, a rate they claim is comparable to a junior attorney with limited experience.

The Court concludes that, Dunlop's rate should be reduced on account of his limited experience, but that $125 per hour is unreasonably low. City Defendants concede that $225 per hour is an appropriate rate for fourth year associates working at civil rights law firms. While Dunlop should not be billed at a rate commensurate with that of a fourth year associate at a civil rights firm, the Court concludes that, under these circumstances and taking Dunlop's experience into account, a

---

[9] According to the log of Wotorson's work, he worked 261 hours on the Kinneary case. Therefore, fees attributable to Wotorson's services are ($300 per hour) x (261 hours) = $78,300.

rate of $160 per hour is reasonable. Accordingly, the
reasonable legal fees attributable to Dunlop's services amount
to $11,360.[10]

    c.    Perthrina Pegus-Neptune

    Pegus-Neptune is a paralegal at Wotorson's law office.
Wotorson submits that $75 per hour is a reasonable rate for
Pegus-Neptune's services. City Defendants do not directly
assert that $75 per hour is unreasonable, but instead, they
claim that many of the tasks listed in her work log were those
of a secretary, whose work would more properly be considered
overhead at the firm and not billed to clients at an hourly
rate. After reviewing Pegus-Neptune's work log, the Court
concludes that she was in fact performing paralegal, not
secretarial, duties, including: document reviewing, organizing
trial documents, and preparing trial subpoenas. Accordingly,
the reasonable paralegal fees attributable to Pegus-Neptune's
services amount to $4,492.50.[11]

    In addition to the fees of Wotorson ($78,300), Dunlop
($11,360), and Pegus-Neptune ($4,492.50), Kinneary has also
incurred costs of $1,723 during the litigation of his case,

---

[10] Wotorson concedes that the log of Dunlop's hours should be reduced by
2.5 hours to reflect a deposition that was listed but never took place,
and thus, Dunlop's log should read 71 hours worked on Kinneary's case.
Therefore, the fees attributable to Dunlop's services are ($160 per hour)
x (71 hours) = $11,360.

[11] According to the log of Pegus-Neptune's work, her services on Kinneary's
case totaled 59.90 hours. Therefore, the fees attributable to Pegus-
Neptune's services are ($75 per hour) x (59.90 hours) = $4,492.50.

bringing his total reasonable attorneys' fees and costs to $95,875.50.

### III.  ORDER

For the reasons stated above, it is hereby

ORDERED that the motion of defendants City of New York and Zoe Ann Campbell (collectively, "City Defendants"), for judgment as a matter of law pursuant to Federal Rule of Civil Procedure ("FRCP") 50 is DENIED; and it is further

ORDERED that City Defendants' motion seeking a new trial pursuant to FRCP 59 is GRANTED on the issue of the amount of non-economic damages awarded to plaintiff Joseph Kinneary ("Kinneary"), unless Kinneary elects, in writing by February 25, 2008, to remit the non-economic damages award against City Defendants determined by the jury after trial to $25,000; and it is further

ORDERED that Kinneary's motion (Docket No. 50) for reinstatement is DENIED; and it is further

ORDERED that Clerk of Court is directed to award prejudgment interest using the methodology set forth above, on page fourteen of this decision, on the jury's back pay award to Kinneary of $100,000 from March 4, 2004 to the date that judgment is entered; and it is finally

ORDERED that Kinneary's motion (Docket No. 50) for attorneys' fees and costs is GRANTED in the amount of

$95,875.50.

The Clerk of Court is directed to withdraw any other pending motions.

**SO ORDERED.**

Dated:    New York, New York
          13 February 2008

Victor Marrero
U.S.D.J.